IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

THERESA CHRISTOFORETTI,

        Plaintiff,

v.

BALLY'S PARK PLACE, INC. d/b/a
BALLY'S ATLANTIC CITY, et al.

        Defendants.

CIVIL ACTION
NO. 12-4687

# OPINION

**Slomsky, J.**                                                             August 30, 2021

I.     INTRODUCTION ........................................................................................................... 3

II.    BACKGROUND ............................................................................................................. 4

    A.    The August 4, 2010 Incident ................................................................................. 4

    B.    The Report and Deposition of R. Britton Colbert, CHA ....................................... 5

    C.    Procedural History ................................................................................................ 6

III.   STANDARD OF REVIEW ............................................................................................. 7

    A.    The Daubert Standard on the Admissibility of Expert Witness Testimony .......... 7

        i.    Qualification ................................................................................................... 8

        ii.   Reliability ....................................................................................................... 8

        iii.  Fit .................................................................................................................... 9

    B.    The Summary Judgment Standard ........................................................................ 9

IV.    ANALYSIS ..................................................................................................................... 10

    A.    Defendant's Motion to Bar Plaintiff's Liability Expert Will Be Denied .............. 11

        i.    Plaintiff's Expert is Qualified to Render an Opinion on the Hotel and
            Lodging Industry Customs and Defendant's Duty of Care .......................... 11

        ii.    The Opinion of Plaintiff's Expert is Based on Reliable Reasoning................. 12

        iii.   The Opinion of Plaintiff's Expert is "Fit" to Assist the Trier of Fact............ 14

   B.   Defendant's Motion for Summary Judgment Will Be Denied Because There Is a Genuine Dispute Over Ownership of the Property Where Plaintiff Fell .... 15

V.   CONCLUSION .............................................................................................................. 17

**I.     INTRODUCTION**

On August 4, 2010, seventy-year-old Plaintiff Theresa Christoforetti traveled with friends to Atlantic City, New Jersey. (See Doc. No. 71-1 ¶ 2.) After visiting several establishments, Plaintiff separated from the group and approached the east entrance of Bally's Wild, Wild, West Casino. (See id. ¶ 4.) As she approached the entrance, she stepped to her right to avoid other patrons exiting the casino, and she did not notice anything on the ground. (See id. ¶¶ 5, 8.) She alleges, however, that either human or animal feces was on the ground where she stepped, causing her to slip and fall. (See id. ¶ 5; Doc. No. 72 ¶ 7.) As a result, Plaintiff suffered a right ankle fracture, mental pain, and surgical expenses. (See Doc. Nos. 1 ¶ 6; 72 ¶ 13.)

On July 27, 2012, Plaintiff filed this action against Bally's Park Place d/b/a Bally's Atlantic City ("Defendant"). (Doc. No. 1.) In the Complaint, Plaintiff alleges that Bally's was negligent in causing her injuries. (See id. ¶ 5.) On August 22, 2019, Defendant filed the instant Motion to Bar the Opinions of Plaintiff's Liability Expert and for Summary Judgment, seeking a grant of summary judgment and to bar the testimony of R. Britton Colbert, CHA,[1] whom Plaintiff intends to call as an expert witness, from testifying at trial. (Doc. No. 71.) In the Motion, Defendant seeks to preclude Colbert's testimony under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), and Federal Rule of Evidence 702. (See id. at 9-22.) Defendant also moves for summary judgment, contending that Plaintiff's negligence claim fails as a matter of law. (See id. at 22-40.)

The Motion is now ripe for disposition. For reasons that follow, the Court finds that Colbert is permitted to testify as an expert on the hotel and lodging industry. Furthermore, there are

---

[1]   The suffix "CHA" refers to the title of "Certified Hotel Administrator," the highest certification from the American Hotel and Lodging Educational Institute.

3

genuine disputes of material fact concerning whether Defendant owned the property where Plaintiff allegedly fell. Accordingly, the Court will deny Defendant's Motion to Bar Plaintiff's Liability Expert and for Summary Judgment.

## II.   BACKGROUND

### A. The August 4, 2010 Incident

Defendant Bally's Park Place d/b/a Bally's Atlantic City is part of Caesar's Entertainment Group and is operated by Bally's Park Place, Inc. d/b/a Bally's Atlantic City ("Bally's"). (See Doc. No. 71-3 at 39.) Bally's property includes Bally's Wild, Wild, West Casino (the "Casino"), which has storefront property abutting the Boardwalk in Atlantic City, New Jersey. (See id.) The Boardwalk is a walkway of wooden boards that extends parallel to the Atlantic Ocean coastline.

On Wednesday, August 4, 2010, Plaintiff Theresa Christoforetti, who was seventy years of age at the time, and her friends traveled to Atlantic City. (See Doc. No. 71-1 ¶ 2.) The group spent the day eating, drinking, and gambling at various restaurants and casinos along the Boardwalk. (See id. ¶¶ 2-3.) At approximately 4:30 p.m., while walking along the Boardwalk, the group passed by Defendant's Casino, and Plaintiff diverted from her friends to gamble inside. (See id. ¶ 4.)

After leaving her friends, Plaintiff approached the Casino's east entrance, which is angular to, and not flush with, the Boardwalk's border.[2] (See id.; Doc. No. 72, Exs. C, E.) As Plaintiff approached the entrance, she noticed other Bally's patrons exiting from the left door, so she stepped to her right to enter through the right entrance. (See Doc. No. 71-1 ¶ 5.) When she stepped aside, Plaintiff did not see anything on the ground; however, human or animal excrement was on

---

[2]   As will be discussed in more detail below, the parties dispute the shape of Defendant's property lot and whether Defendant slipped on the Boardwalk or Bally's property.

4

the ground outside the right entrance, which Plaintiff stepped on, causing her to slip and fall. (See id. ¶¶ 5, 8; Doc. No. 72 ¶ 7.) As a result of her fall, Plaintiff suffered a right ankle injury that required her to undergo surgery. (See Doc. No. 72, Ex. F.) Due to the accident, she claims to have suffered physical and mental pain, lost wages, and medical expenses. (See Doc. No. 1 ¶ 6.)

Defendant's closed-circuit television ("CCTV") surveillance footage captured the incident on video. (See Doc. No. 72 ¶ 16.) The footage shows that in the thirty minutes prior to the incident, no Bally's employees were seen inspecting or cleaning the Casino's east entrance. (See id. ¶ 19.) In addition, the footage shows Plaintiff's fall and Bally's security personnel responding to the scene. (See id. ¶ 21; Doc. No. 71-1 ¶ 12.) Later on, Bally's security personnel prepared an incident report, took photographs, and cleaned up the remaining debris. (Id.)

### B. The Report and Deposition of R. Britton Colbert, CHA

Plaintiff hired a liability expert, R. Britton Colbert, CHA, who authored a report evaluating the standard of care and Defendant's duty of care in this case. (See Doc. No. 71-3 at 39.) Colbert has a Bachelor of Science in Business Administration from University of Denver's School of Hotel and Restaurant Management. (See id. at 51.) Additionally, he has worked in operations and corporate hotel management for over thirty years and has been certified for over twenty-one years as a Hotel Administrator by the American Hotel & Lodging Association. (See Doc. No. 72 at 221.) He also maintains his own consulting business that specializes in operating standards, property control, and premises liability. (See id.)

On December 12, 2018, the parties took Colbert's deposition. (See Doc. No. 71-3 at 54.) In his report and deposition, Colbert references the American Hotel and Lodging Association's publication Security and Loss Prevention Management, which he uses to opine on industry standards in hotel and lodging management. (See id. at 43; Doc. No. 72 at 224.) Based on that

5

publication and his experience, he testifies that "it is customary and highly important daily practice in the hotel and lodging industry to properly and thoroughly inspect the lodging premises for hazards and other potential safety concerns or threats which could cause injuries to individuals on the property." (Doc. No. 71-3 at 45.) He also cites to a publication titled Hotel & Motel Management, which notes that the industry standard is for inspections to be done "as often as is reasonable in light of frequency and use." (Id.) Based on this information, Colbert concludes that Bally's owed their patrons, such as Plaintiff, a duty to use reasonable care to keep the premises in a reasonably safe condition. (See id.)

### C. Procedural History

On July 27, 2012, Plaintiff Christoforetti filed this action in the United States District Court for the District of New Jersey. (Doc. No. 1.) In the Complaint, Plaintiff alleges that Bally's owned and negligently operated the area where Plaintiff slipped, and that their negligence caused her injuries. (See id. ¶ 5.)

On August 22, 2019, Defendant Bally's filed the instant Motion to Bar Plaintiff's Liability Expert and for Summary Judgment. (Doc. No. 71-2.) In its Motion, Defendant argues Colbert's testimony should be barred because: (1) he is not qualified to offer opinions in this matter; (2) his opinions are based upon unreliable methodologies; and (3) his opinions are not relevant for the trier of fact. (See id. at 9-22.) Moreover, Defendant argues it is entitled to summary judgment with respect to the negligence claim because it did not own the disputed area, so it did not owe Plaintiff a duty to clean or remove feces from the area. (See id. at 22-40.) In support it claims: (a) Plaintiff fell on the Boardwalk, which Defendant does not own; and (b) the City of Atlantic City does not require Defendant to clean up or monitor the Boardwalk because it is not considered a public sidewalk. (See id. at 16.)

On August 30, 2019 Plaintiff filed Opposition to Defendant's Motion. (Doc. No. 72.) In her Opposition, Plaintiff argues Colbert is qualified to render his opinion based on his experience, his opinions are reliable because of that experience, and thus his opinions are fit to assist the trier of fact. (See id. at 219-27.) Moreover, she argues Defendant is not entitled to summary judgment because there is a genuine dispute of material fact over the ownership of the area where Plaintiff slipped and fell and whether it is a public sidewalk. (See id. at 228.)

### III.   STANDARD OF REVIEW

#### A.  The Daubert Standard on the Admissibility of Expert Witness Testimony

Federal Rule of Evidence 702 governs the admissibility of expert testimony. See Fed. R. Evid. 702. Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Id.

In Daubert v. Merrell Dow Pharmaceuticals, Inc., the United States Supreme Court provided the analytical framework to determine the admissibility of expert testimony under Rule 702. 509 U.S. 579 (1993). Daubert held that Rule 702 imposes a "gatekeeping" obligation on the trial court to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." Id. at 598. Also under Rule 702, the Third Circuit held that it "has three major

requirements: (1) the proffered witness must be an expert, i.e., must be qualified; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge; and (3) the expert's testimony must assist the trier of fact." Pineda v. Ford Motor Co., 520 F.3d 237, 244 (3d Cir. 2008).  These requirements are also referred to as "qualification, reliability and fit." Estate of Schneider v. Fried, 320 F.3d 396, 404 (3d Cir. 2003).

### i. Qualification

First, the Third Circuit has "interpreted Rule 702's qualification requirement liberally." Pineda, 520 F.3d at 244 (citing Schneider, 320 F.3d at 404; In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 741 (3d Cir. 1994)).  Accordingly, a "broad range of knowledge, skills, and training qualify an expert." Paoli, 35 F.3d at 741.  Because both the "substantive" and "formal" qualifications of an expert are viewed liberally, the Third Circuit has "eschewed imposing overly rigorous requirements of expertise and [has] been satisfied with more generalized qualifications." Id.  Thus, "it is an abuse of discretion to exclude testimony simply because the trial court does not deem the proposed expert to be the best qualified or because the proposed expert does not have specialization that the court considers most appropriate." Pineda, 520 F.3d at 244 (quoting Holbrook v. Lykes Bros. S.S. Co., 80 F.3d 777, 782 (3d Cir. 1996)).

### ii. Reliability

Turning to the "reliability" requirement, the Third Circuit has interpreted reliability "to mean that an expert's testimony is admissible so long as the process or technique the expert used in formulating the opinion is reliable." Pineda, 520 F.3d at 244 (internal quotations omitted) (quoting Paoli, 35 F.3d at 742).  Notably, "[t]he evidentiary requirement of reliability is lower than the merits standard of correctness." Id. at 744.  Admissibility turns "on the expert's methods and reasoning; credibility decisions arise after admissibility has been determined." Kannankeril v.

Terminix Intern., Inc., 128 F.3d 802, 806 (3d Cir. 1997). When examining expert testimony that is based on practical experience, rather than academic theories, "the Daubert factors (peer review, publication, potential error rate, etc.) simply are not applicable" because the reliability of testimony from a practical experience expert "depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind it." States v. Fernwood Hotel and Resort, No. 12-906, 2014 WL 198568, at *3 (M.D. Pa. Jan. 15, 2014) (quoting United States v. Hankey, 203 F.3d 1160, 1169 (9th Cir. 2000)).

### iii. Fit

To satisfy the "fit" requirement, "the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact." Schneider, 320 F.3d at 404. For expert testimony to meet the Daubert "fit" requirement, it must "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. "This condition goes primarily to relevance. Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." Daubert, 509 U.S. at 591 (internal quotations omitted) (citing United States v. Downing, 753 F.2d 1224, 1242 (3d Cir. 1985)).

### B. The Summary Judgment Standard

Granting summary judgment is an extraordinary remedy. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reaching this decision, the Court must determine whether "the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Favata v. Seidel, 511 F. App'x 155, 158 (3d Cir. 2013) (internal quotations omitted) (quoting Azur v. Chase Bank, USA, Nat'l Ass'n, 601 F.3d 212, 216

9

(3d Cir. 2010)).  A disputed issue is "genuine" only if there is sufficient evidentiary basis on which a reasonable jury could find for the non-moving party[.]"  Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  For a fact to be considered "material," it "must have potential to alter the outcome of the case."  Favata, 511 F. App'x at 158.  Once the proponent of summary judgment "points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor."  Id. (quoting Azur, 601 F.3d at 216).

In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."  Id. (alteration in original) (quoting Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ., 587 F. 3d 176, 181 (3d Cir. 2009)).  The Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried.  See Anderson, 477 U.S. at 247-49.  Whenever a factual issue arises which cannot be resolved without a credibility determination, at this stage the court must credit the non-moving party's evidence over that presented by the moving party.  See id. at 255.  If there is no factual issue, and only one reasonable conclusion could arise from the record regarding the potential outcome under the governing law, summary judgment must be awarded in favor of the moving party.  See id. at 250.

**IV.   ANALYSIS**

In the instant Motion, Defendant contends: (1) Colbert's testimony should be barred because it does not meet the qualification, reliability and fit requirements; and (2) it is entitled to summary judgment because it did not owe a duty of care to Plaintiff as she did not slip on its property.  (See Doc. No. 71-2 at 9-40.)  Conversely, Plaintiff submits Colbert's testimony is

10

admissible and there is a genuine dispute of material fact about whether Plaintiff fell on Defendant's property. (See Doc. No. 72 at 219-28.) Each issue will be discussed seriatim.

### A. Defendant's Motion to Bar Plaintiff's Liability Expert Will Be Denied

#### i. Plaintiff's Expert is Qualified to Render an Opinion on the Hotel and Lodging Industry Customs and Defendant's Duty of Care

Defendant argues that Colbert is not qualified to offer his opinion on the hotel and lodging industry customs and Defendant's duty of care based on his education, training, and experience. (See Doc. No. 71-2 at 13.) Plaintiff, however, submits that under the liberal qualification standard, Colbert is qualified in this case to render his opinion under Rule 702. (See Doc. No. 72 at 220-21.)

The Third Circuit has consistently emphasized a liberal policy of admissibility under Rule 702, which extends to the formal qualification of experts. See Paoli II, 35 F.3d at 741; see also Pineda, 520 F.3d at 243. In addition, the Third Circuit has "eschewed imposing overly rigorous requirements of expertise and [has] been satisfied with more generalized qualifications." Paoli II, 35 F.3d at 741. For example, in Hammond v. International Harvester Co., 691 F.2d 646 (3d Cir. 1982), the Third Circuit found that an automobile and agricultural equipment salesperson who taught high school automobile classes qualified as an expert in a personal injury case involving a tractor. The Hammond court found that "[p]ractical experience as well as academic training and credentials may be the basis of qualification (as an expert witness)." Id. at 653 (quoting Moran v. Ford Motor Co., 476 F.2d 289, 291 (8th Cir. 1973) (internal quotation omitted)); see also Lauria v. Nat'l R.R. Passenger Corp., 145 F.3d 593, 599 (3d Cir. 1998) (foreman's years of experience with railroad track equipment, maintenance, and safety qualified him to testify as an expert on Amtrak's duty to maintain railroad track). Additionally, in States v. Fernwood Hotel and Resort, a case involving a falling glass pane window, a defendant challenged a purported glass expert's

11

opinion because the expert had not taken engineering courses, was not a licensed engineer, and did not hold himself out as an engineer. See 2014 WL 198568, at *2. The court disagreed, finding the expert qualified based on his thirty-nine years' experience in the glass industry, yearly attendance at conferences to learn about new glass materials, and "extensive personal and practical experience in the glass industry . . . ." Id.

Similarly, Colbert has extensive practical experience, academic training, and credentials in the hotel and lodging industry. He received a Bachelor of Science in Business Administration from University of Denver's School of Hotel and Restaurant Management. (See Doc. No. 71-3 at 51.) Additionally, he has worked in operations and corporate hotel management for over thirty years and has been certified for over twenty-one years as a Hotel Administrator by the American Hotel & Lodging Association, the highest certification in the hotel and lodging industry. (See Doc. No. 72 at 221.) He also maintains his own consulting business that specializes in operating standards, property control, and premises liability. (See id.)

Given his considerable experience, education, and credentials in the hotel and lodging area, Colbert is qualified to render an opinion in this case on hotel and lodging industry customs and Defendant's duty of care to Plaintiff. Any argument that Colbert's education, experience, or training does not provide a viable industry standard goes to the weight of his testimony, not its admissibility.

      **ii.**    **The Opinion of Plaintiff's Expert is Based on Reliable Reasoning**

Next, Defendant argues Colbert does not use any reliable methodology to support his opinions. (See Doc. No. 71-2 at 4-6.) To the contrary, Plaintiff alleges that Colbert's testimony is reliable because he uses accepted standards and practices learned through his experience, industry publications, and informal resources. (See Doc. No. 72 at 226.)

The Third Circuit has interpreted reliability "to mean that an expert's testimony is admissible so long as the process or technique the expert used in formulating the opinion is reliable." Pineda, 520 F.3d at 244 (internal quotations omitted) (quoting Paoli, 35 F.3d at 742). Notably, "[t]he evidentiary requirement of reliability is lower than the merits standard of correctness." Id. at 744. Admissibility turns "on the expert's methods and reasoning; credibility decisions arise after admissibility has been determined." Kannankeril, 128 F.3d at 806.

Defendant urges the Court to rely on a list of factors cited in Daubert, e.g., a testable hypothesis, peer review, publication, potential error rate, and compare those factors to Colbert's report. (See Doc. No. 71-2 at 14.) It is well established, however, that these factors "are neither exhaustive nor applicable in every case." Kannankeril, 128 F.3d at 806-07. The Daubert Court "made clear that its list of factors was meant to be helpful, not definitive." Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 151 (1999). And when examining expert testimony that is based on practical experience, rather than academic theories, "the Daubert factors (peer review, publication, potential error rate, etc.) simply are not applicable" because the reliability of testimony from a practical experience expert "depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind it." Fernwood Hotel and Resort, 2014 WL 198568, at *3 (quoting Hankey, 203 F.3d at 1169).

Here, Colbert renders his opinion based on his knowledge and experience in the hotel and lodging industry. (See Doc. Nos. 71-3 at 51; 72 at 221.) As set forth when discussing his qualifications, he has extensive experience with hotels, gleaned from his career in the industry. (See Doc. No. 72 at 221.) He has over thirty-years of experience working in the hotel and lodging industry and holds a CHA, the highest industry certification. (See id.) His personal experience gives credence to the reliability of his opinion on hotel and lodging industry standards.

Moreover, he bases his opinion upon careful review of the evidence and his understanding of the hotel and lodging industry. (See id. at 224; Doc. No. 71-3 at 43, 45, 54.) In his report and deposition, Colbert cites to the American Hotel and Lodging Association's publication titled Security and Loss Prevention Management for inspections and monitoring standards. (See Doc. No. 72 ¶ 26.) These standards offer that "it is customary and highly important daily practice in the lodging industry to properly and thoroughly inspect the lodging premises for hazards and other potential safety concerns or threats which could cause injuries to individuals on the property." (Doc. No. 71-3 at 45.) He also cites to an article in a publication titled Hotel & Motel Management, which states that the industry standard is for inspections to be conducted "as often as is reasonable in light of frequency and use." (Id.)

In sum, the fact that Colbert does not use a testable theory or methodology subject to peer review does not render his testimony unreliable under Rule 702. To the contrary, his vast experience in the hotel and lodging industry and the publications he references supports the reliability of his opinion.

### iii. The Opinion of Plaintiff's Expert is "Fit" to Assist the Trier of Fact

Defendant argues Colbert's opinion is of no use to the trier of fact because of its unreliability. (See Doc. No. 71-2 at 20-22.) Plaintiff submits, however, that Colbert's opinion will assist a trier of fact because his testimony centers on the sufficiency of Bally's safety and inspection procedures, which will assist an average juror in understanding whether hotels owe their patrons a duty to inspect their premises. (See Doc. No. 72 at 226-27.)

To satisfy the "fit" requirement, "the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact." Schneider, 320 F.3d at 404. For the reasons set forth in the preceding two sections, Colbert's testimony is relevant in determining the hotel and lodging

14

standard of care and what duty, if any, Defendant owed to Plaintiff, and this will assist a jury. Any argument that Colbert is not "fit" to assist the trier of fact goes to the weight of his testimony, not its admissibility.

Therefore, for the foregoing reasons, the Court will deny Defendant's Motion to Bar Plaintiff's Liability Expert.

### B. Defendant's Motion for Summary Judgment Will Be Denied Because There Is a Genuine Dispute over Ownership of the Property Where Plaintiff Fell

Next, Defendant moves for summary judgment, arguing that Bally's did not owe Christoforetti a duty of care to keep the premises reasonably safe because: (a) Plaintiff fell on the Boardwalk, which Defendant does not own; and (b) the City of Atlantic City does not require Defendant to clean up or monitor the Boardwalk because is not considered a public sidewalk. (See Doc. 71-2 at 16.) Plaintiff refutes these arguments, claiming Defendant does own and control the area where she slipped. (See Doc. No. 72 ¶ 12.) When viewing the evidence in the light most favorable to Plaintiff, there is a genuine dispute over who owned the property where Plaintiff slipped and fell. Therefore, summary judgment on Bally's Defendants' direct liability will be denied.

"The fundamental elements of a negligence claim are a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, injury to the plaintiff proximately caused by the breach, and damages." Robinson v. Vivirito, 86 A.3d 119, 124 (N.J. 2014) (citing Jersey Cent. Power & Light Co. v. Melcar Util. Co., 59 A.3d 561, 571 (N.J. 2013); Weinberg v. Dinger, 524 A.2d 366, 373 (N.J. 1987)). "Determination of the existence of a duty largely depends on weighing the relationship of the parties, the nature of the risk, and the public interest in the proposed solution." Kelly v. Gwinnell, 476 A.2d 1219, 1222 (N.J. 1984). Whether Defendant owed a duty of care to Plaintiff turns in part on an underlying factual issue over who owns the area

15

where Plaintiff fell.  If Bally's owned the area where Christoforetti fell, they owed a duty to keep the premises reasonably safe.  If Bally's did not own the area, however, then they did not owe Christoforetti a duty of care.

In support of its argument, Bally's posits that it was not liable for Plaintiff's injuries because she fell on the Boardwalk, which it is not responsible to maintain.  (See Doc. No. 71-2 at 16.)  Under New Jersey law, Atlantic City is exclusively responsible for maintenance of the Boardwalk. See Horn v. Peanut World Co., 837 F. Supp. 701, 704 (E.D. Pa. 1993).  For example, in Horn v. Peanut World Co., plaintiff exited defendant's store that opened directly onto the Boardwalk and tripped on a raised nail protruding from the Boardwalk. See id. at 701.  Plaintiff sued defendant for her resulting damages. See id.  The court held that the Boardwalk, unlike the sidewalk, was owned by Atlantic City as a public park. See id. at 704.  Accordingly, it concluded:

> Because the Boardwalk, unlike a sidewalk, is a City-owned public park which Atlantic City tightly controls and strictly regulates, we do not believe that it qualifies as a common sidewalk.  The maintenance duties for the Boardwalk are exclusively in the hands of the City.  Not only does the City appear conscientiously to maintain the Boardwalk, but given that the abutting store owners are not permitted to place any objects on the Boardwalk, or drive any vehicles there without a permit, it would be difficult, if not impossible, for those owners to perform repairs in the area.

Id.

Here, there is a genuine dispute of material fact as to whether the slip and fall happened on Defendant's property.  Defendant relies on Horn, contending that Plaintiff fell on the Boardwalk that Atlantic City is exclusively responsible for controlling and maintaining.  (See Doc. No. 71-2 at 16.)  However, Plaintiff avers that she did not fall on the Boardwalk, but on Bally's property.  (See Doc. No. 72 at 228-30.)  In support, she submits tax maps, satellite images, and a tax accessor's opinion that suggest Defendant owned and controlled the area outside the Casino's

16

entrance.³  (See id.)  Given this evidence, there is a genuine dispute over whether the area outside the Casino's entrance was the Boardwalk or Defendant's property.

Moreover, this case is distinguishable from Horn.  In Horn, there was no dispute that once a patron left the establishment's entrance, he or she stepped onto the Boardwalk.  See Horn, 837 F. Supp. at 704.  Here, however, because the entrance at issue is on a diagonal angle to the Boardwalk and apparently does not sit flush with it, there is a dispute over whether one steps immediately onto the Boardwalk when entering Defendant's establishment.  (See Doc. No. 72 at 228-30.)  The ownership dispute here makes Horn inapplicable.

When looking at the evidence in the light most favorable to Plaintiff, there is a genuine dispute of material fact about Defendant's ownership of the area where Plaintiff slipped and fell, and therefore summary judgment will not be granted in favor of Defendant.⁴

**V.     CONCLUSION**

For the foregoing reasons, Defendants Motion to Bar Plaintiff's Liability Expert and For Summary Judgment (Doc. No. 71) will be denied.  An appropriate Order follows.

---

³ Defendant argues the tax maps, satellite images, and tax accessors opinion should not be considered because they were offered by Plaintiff after the deadline for fact and expert discovery.  (See Doc. No. 73 at 8.)  However, these items are public information that the Court can take judicial notice of under Federal Rule of Evidence 201.

⁴ For purposes of this Opinion, the Court need not address Defendant's assertion that Atlantic City does not require Defendant to clean up or monitor for feces under any ordinance because the Court must first resolve for summary judgment purposes the underlying dispute over ownership of the property where Plaintiff slipped and fell.  Given that summary judgment is being denied, the cleanup requirements of Atlantic City are a matter for trial.